IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TONY C. FRANKLIN,

              Plaintiff,          OPINION AND ORDER

v.

                                        12-cv-614-wmc

EDWARD F. WALL, et al.,

              Defendants.[1]

---

State inmate Tony C. Franklin filed this complaint under 42 U.S.C. § 1983, alleging that the defendants violated his constitutional rights and the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. §§ 1320d-1 to d-7, by forwarding his confidential medical records to the prison health services unit without his consent. Franklin requested leave to proceed *in forma pauperis* and paid an initial partial filing fee in compliance with 28 U.S.C. § 1915(b)(1). Citing his status as an indigent inmate, Franklin also has filed a motion requesting court assistance with recruiting *pro bono* counsel to represent him in this case. (Dkt. # 4).

Because Franklin is incarcerated, the court is required screen the proposed complaint to determine whether any portion is (1) frivolous, malicious, or fails to state a claim on which relief may be granted; or (2) seeks monetary damages from a defendant who is immune from such relief. Because Franklin's complaint does not state a claim on

---

[1] Plaintiff originally named former Secretary of the Wisconsin Department of Corrections Gary Hamblin as the primary defendant. Edward F. Wall was appointed Secretary of the Wisconsin Department of Corrections in 2012, following Hamblin's retirement. As Hamblin's successor, Wall is automatically substituted in his place under Fed. R. Civ. P. 25(d).

which relief can be granted under 42 U.S.C. § 1983, this case will be dismissed for reasons and his motion for recruitment of counsel will be denied as moot.

## ALLEGATIONS

For purposes of this order, the court accepts Franklin's well-pleaded allegations as true and assumes the following probative facts:[2]

At the time he filed his complaint, Franklin was incarcerated in the Wisconsin Department of Corrections at the Waupun Correctional Institution ("WCI").[3] While in custody at WCI, Franklin was assigned to the Health Segregation Complex (the "HSC").[4] The defendants are Edward F. Wall, Gloria Marquardt, William Pollard, Belinda Schrubbe, Mark Jensen, Sergeant Dalhke, and Captain Core. Two of the defendants are state-level administrators with the Wisconsin Department of Corrections. Wall is employed as the Department Secretary and Marquardt is the "health information supervisor." The remaining defendants work at WCI, where Pollard is the unit warden,

---

[2] In addressing any *pro se* litigant's complaint, the court must read the allegations generously. *See Haines v. Kerner*, 404 U.S. 519, 521 (1972). The court draws all facts from the Franklin's original complaint and any attached exhibits, which are deemed part of that pleading. *See* FED. R. CIV. P. 10(c); *see also Witzke v. Femal*, 376 F.3d 744, 749 (7th Cir. 2004) (explaining that documents attached to the complaint become part of the pleading, meaning that a court may consider those documents to determine whether plaintiff has stated a valid claim). The court has also considered his proposed amended complaint.

[3] In November 2012, Franklin advised the court that he has been transferred to the state correctional institution located in Kettle Moraine. (Dkt. # 12).

[4] Franklin does not take issue with the medical care he received while in the HSC and chooses not to disclose in his complaint the reason for this assignment, which is, of course, his right.

2

Schrubbe is a health services manager, and Jensen is a registered nurse. Dalhke and Core are correctional officers who work in the WCI mail room.

Franklin's complaint concerns allegations that certain pieces of mail containing confidential medical records were censored or interfered with by prison personnel. Specifically, Franklin notes that he requested some medical records from Dr. Jesse DeGroat, who Franklin describes as an "outside treatment provider." On February 27, 2012, Franklin alleges that Nurse Jensen approached his cell with the requested medical records and asked him to sign an authorization for use and disclosure of those records. Franklin signed the document, but indicated that he preferred to have the medical records "come straight to [him] in the mail."

Franklin also reports requesting additional medical records that were received in the WCI mail room on May 10, 2012, and forwarded directly to the Health Services Unit. Although these medical records were addressed to him, Franklin alleges that Sergeant Dalhke sent this "medical mail" straight to Jensen and Schrubbe in the HSU without Franklin's consent. When Franklin filed a grievance concerning the interference with his mail, Schrubbe reportedly replied that all medical records received in the prison mail room were sent directly to the HSU for "security reasons." Marquardt responded separately to Franklin's concerns, explaining that mailroom personnel do not review the contents of mail received from outside treatment providers. Dkt. # 1, Exh. E. Rather, it is "routine practice" for DOC mailroom personnel to forward mail containing medical records to the HSU, where review is permitted under the "treatment provider" exception to state and federal confidentiality rules.

3

By forwarding his medical records to the HSU without his consent, Franklin alleges that the defendants have violated privacy provisions found in the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320d-1, which restrict disclosure of confidential medical information. Franklin alleges further that the interference with his mail violated his constitutional right to keep his medical information confidential. Franklin seeks declaratory and injunctive relief, as well as compensatory and punitive damages.

OPINION

To state a claim under 42 U.S.C. § 1983, a plaintiff must sufficiently allege facts showing that a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See London v. RBS Citizens, N.A.*, 600 F.3d 742, 745-46 (7th Cir. 2010). Here, Franklin has alleged that the defendants violated his right to privacy under HIPAA and the United States Constitution by interfering with mail that contained confidential medical records. For reasons outlined briefly below, Franklin fails to articulate a valid claim under either theory and, therefore, his complaint must be dismissed under 28 U.S.C. § 1915A.

A. Right to Privacy Under HIPAA

The privacy provisions found in HIPAA were designed primarily to impose a "wall of confidentiality between an employee's health care decisions (and the [health care] plan's financial support for those decisions) and the employer." *Grote v. Sebelius*, — F.3d

4

—, 2013 WL 362725, *6 (7th Cir. 2013) (citations omitted). To accomplish this, HIPAA's privacy provisions restrict the use and disclosure of protected health information by covered entities that have access to confidential information and that conduct certain electronic health care transactions. *See* 42 U.S.C. §§ 1320d-1, 1320d-2; 45 C.F.R. § 164.502. Assuming that Franklin's allegations are true, he does not demonstrate that protected health information was used or disclosed improperly by a covered entity and does not articulate a violation of HIPAA.

Even assuming that an improper disclosure occurred, Franklin does not have a cause of action under these circumstances. HIPAA provides both civil and criminal penalties for improper disclosures of protected information, but limits enforcement of the statute to the Secretary of Health and Human Services. 42 U.S.C. §§ 1320d-5(a)(1), 1320d-6. There is no express language conferring a private right or remedy for disclosure of confidential medical information. Thus, courts have uniformly held that HIPAA did not create a private cause of action or an enforceable right for purposes of a suit under 42 U.S.C. § 1983. *See Carpenter v. Phillips*, 419 Fed. App'x 658, 659 (7th Cir. 2011); *see also Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010); *Seaton v. Mayberg*, 610 F.3d 530, 533 (9th Cir. 2010); *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010); *Sneed v. Pan American Hosp.*, 370 F. App'x 47, 50 (11th Cir. 2010); *Acara v. Banks*, 470 F.3d 569, 570-72 (5th Cir. 2006) (citations omitted).

B. Constitutional Right to Privacy

Franklin also alleges that prison officials violated his constitutional right to privacy

by screening his mail and forwarding his medical records to the HSU without his consent. The United States Supreme Court has already held that a prisoner has no reasonable expectation of privacy, at least under the Fourth Amendment, while incarcerated. *See Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984) (holding that the "right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order"). Still, the lack of privacy in an inmate's prison cell is distinguishable from the privilege of confidentiality that *may* apply to a prisoner's correspondence or personal medical records.

Inmates have rights under the First Amendment to send and receive mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989); *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). The right to send and receive mail does not preclude officials from reviewing or censoring inmate mail. *See Wolff v. McDonnell*, 418 U.S. 539, 575-76 (1974); *Rowe*, 196 F.3d at 782. In that respect, it is well established that inspection of personal mail for contraband is a legitimate prison practice, justified by the important governmental interest in prison security. *See id.*; *see also Gaines v. Lane*, 790 F.2d 1299, 1304-05 (7th Cir. 1986). An exception exists for "legal mail" between an inmate and his attorney, which is considered confidential. *See Guajardo-Palma v. Martinson*, 622 F.3d 801, 802-05 (7th Cir. 2010) (discussing at length the attorney-client privilege implicated by inspecting inmate legal mail). Because of the attorney-client privilege, legal mail may be opened for inspection only in the presence of the inmate, but may not be read.[5] *See Wolff*,

---

[5] Wisconsin recognizes that legal mail is privileged and does not inspect correspondence

418 U.S. at 577; *Olson v. Brown*, 284 F.R.D. 398, 404-06 (N.D. Ind. 2012) (discussing the scope of First Amendment protections that pertain to inmate mail handling procedures).

Although medical treatment information may be subject to an arguably similar doctor-patient evidentiary privilege, there is no recognized exception for inspection of inmate mail containing medical information comparable to that for legal communications, and no thus no currently recognized constitutional right of privacy that protects inmate medical records.[6] *See, e.g., Anderson v. Romero*, 72 F.3d 518, 523 (7th Cir. 1995) (noting that the court was unable to find "any appellate holding that prisoners have a constitutional right to the confidentiality of their medical records"); *Franklin v. District of Columbia*, 163 F.3d 625, 638-639 n.14 (D.C. Cir. 1999) (concluding that prisoners "do not have a privacy right, derived from the Constitution," that protects communication of medical information during the course of treatment).

Assuming that prisoners have a right of privacy, courts have also considered whether disclosure of medical information or records could be actionable under the Eighth Amendment's prohibition of cruel and unusual punishment. *See Anderson*, 72 F.3d

---

sent by inmates to attorneys, certain public officials or organizations unless there is reason to believe that the mail contains contraband. *See* WIS. ADMIN. CODE DOC § 309.04(3) (listing the governor, members of the Wisconsin legislature or United States congress, federal investigative agencies, and the clerk or judge of any state or federal court, among others, as parties to whom legal mail may be sent). Likewise, institution staff may open legal mail in the presence of the inmate, and inspect the contents for contraband, but may read the mail only if staff has "reason to believe it is other than a legal document." WIS. ADMIN. CODE DOC § 309.04(3).

[6] Franklin argues that correspondence containing medical information should be accorded the same privilege as legal mail. Even if such a privilege were afforded, the Seventh Circuit has held that the mere act of opening privileged legal mail outside of an inmate's presence is not grounds for a federal civil rights lawsuit. *See Guajardo-Palma*, 622 F.3d at 805.

at 523. For example, if prison officials disseminated humiliating details of a prisoner's medical history for gratuitous reasons unrelated to a legitimate penological interest, such disclosure might constitute the infliction of cruel and unusual punishment. *See, e.g., Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999). Franklin's allegations come nowhere close to demonstrating an Eighth Amendment violation. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]").

Franklin, who was confined to the WCI Health Segregation Complex at the time that his medical records were received in the mail room, does not provide any description of the content or character of his medical condition. For example, he does not allege that the medical reports at issue contained confidential medical information of a sensitive or embarrassing nature. Equally deficient, he does not suggest that his medical information was disseminated amongst correctional officers, the inmate population, or others for an improper purpose. On the contrary, he alleges only that his medical files were forwarded to the HSU, which was providing him with medical care while incarcerated.

Under these circumstances, Franklin fails to demonstrate an impermissible invasion of privacy. *See Anderson*, 72 F.3d at 523; *see also Doe v. Wigginton*, 21 F.3d 733, 740 (6th Cir. 1994) (holding that officials did not violate an inmate's right to privacy by disclosing his HIV status to a correctional officer). Accordingly, Franklin's fails to state a

8

claim upon which relief may be granted under 42 U.S.C. § 1983, and his complaint will be dismissed.

## ORDER

IT IS ORDERED that:

1. Plaintiff Tony C. Franklin's request for leave to proceed is DENIED and his complaint is DISMISSED with prejudice under 28 U.S.C. § 1915A.

2. The dismissal will count as a strike for purposes of 28 U.S.C. § 1915(g).

3. Franklin's motion for court assistance with locating *pro bono* counsel (dkt. # 4) is DENIED as moot.

4. Plaintiff is obligated to pay the unpaid balance of his filing fee in monthly installments as described in 28 U.S.C. § 1915(b)(2). The clerk of court is directed to send a letter to the state prison where plaintiff is in custody, advising the warden of his obligation to deduct payments from plaintiff's inmate trust fund account until the filing fee has been paid in full.

Entered this 5th day of April, 2013.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge